UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| MICHELLE HAYWOOD, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 1:12 CV 327 |
| GENERAL MOTORS, | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

Defendant General Motors has moved for summary judgment on plaintiff Michelle Haywood's claims. (DE # 36.) Plaintiff has filed a response (DE # 38), and defendant has filed a reply (DE # 39). For the following reasons, defendant's motion is granted.

## I. Facts and Procedural History

The following facts are taken primarily from defendant's statement of material facts. (DE # 37 at 2.) Plaintiff has filed a statement of genuine disputes in response (DE # 38), but does not offer any evidence of her own. Instead, plaintiff simply attacks some of the evidence upon which defendant bases its motion for summary judgment. The court will note plaintiff's arguments on these facts, to the extent they are relevant.

On January 23, 2012, plaintiff, who is black, began working at defendant's Fort Wayne, Indiana assembly plant as a temporary employee. (DE # 37 at 2; DE # 37-1 at 10; Haywood Dep. at p. 37:13-16.) During her orientation, plaintiff learned that defendant prohibits all types of harassment and discrimination, and plaintiff knew that an

employee should report harassment or discrimination if he or she believed that they were a victim of harassment or discrimination. (DE # 37 at 2; DE # 37-1 at 12-13; Haywood Dep. at pp. 47:25-49:15.) On her first day of employment, plaintiff signed a form acknowledging that she was a temporary, at-will employee who was not eligible for any benefits or the accrual of time for seniority purposes. (DE # 37 at 2-3; DE # 37-1 at 12; Haywood Dep. at p. 45:3-25.)

When plaintiff began her employment with defendant, she was assigned to the paint department. (DE # 37 at 3; DE # 37-1 at 11; Haywood Dep. at p. 42:12-16.) Plaintiff worked in the paint department for approximately five months. (DE # 37 at 3; DE # 37-1 at 13; Haywood Dep. at p. 51:13-19.) The paint department was a popular job assignment among employees because some employees considered it to be less physically demanding than other posts. (DE # 37 at 3; DE # 37-1 at 13-14; Haywood Dep. at pp. 52:21-53:2.)

While working in the paint department, plaintiff was assigned to putting seals on car doors, a position that was open because the person that regularly held that position was on vacation. (DE # 37 at 3; DE # 37-1 at 14; Haywood Dep. at p. 55:1-21.) After the employee returned from vacation, plaintiff was assigned to a different task within the paint department. (DE # 37 at 3; DE # 37-1 at 14; Haywood Dep. at p. 55:1-25.) Plaintiff worked several other temporary job assignments in the paint department that each ended after the person she was filling in for returned to work. (DE # 37 at 4; DE # 37-1 at 15; Haywood Dep. at p. 58:1-21; DE # 37-1 at 16; Haywood Dep. at p. 61:22-25.)

2

In June of 2012, plaintiff was moved from the paint department to the general assembly department, along with a white female named Keri (last name unknown) who was also a temporary employee. (DE # 37 at 4; DE # 37-1 at 16; Haywood Dep. at p. 62:18-20; Haywood Dep. at pp. 63:25-64:3.) Plaintiff moved to general assembly before Keri did, and plaintiff was unaware of when Keri eventually made the move to general assembly. Plaintiff never worked with Keri in the general assembly department. (DE # 37 at 4; DE # 37-1 at 16; Haywood Dep. at p. 64:12-20.) Plaintiff did not know what Keri was assigned to do within the general assembly department. (DE # 37 at 4; DE # 37-1 at 16; Haywood Dep. at p. 64:12-20.) Although plaintiff never observed Keri working in the paint department again, she was told that Keri had switched back to the paint department after three days in general assembly. (DE # 37-1 at 16-17; Haywood Dep. at pp. 64:21-65:16.) Plaintiff worked in general assembly until the end of her employment. (DE # 37-1 at 16-17; Haywood Dep. at p. 68:23-25.)

On July 13, 2012 plaintiff was terminated. (DE # 37 at 5; DE # 37-1 at 22; Haywood Dep. at p. 87:1-7).[1] Defendant asserts that it fired plaintiff in July of 2012 due to poor work performance. (DE # 37 at 5 ¶ 21; DE # 37-1 at 62-63.) After a shutdown at defendant's plant, plaintiff was rehired in August of 2012 and assigned to work in general assembly. (DE # 37 at 5; DE # 37-1 at 23-24; Haywood Dep. at pp. 92:19-93:1.)

---

[1] Defendant contends that plaintiff was fired for poor performance. (DE # 37 at 5.) Plaintiff contends that she was fired because of her race. (DE # 37-1 at 99.)

Plaintiff's final two jobs in general assembly were battery install and A/C install. (DE # 37-1 at 26; Haywood Dep. at p. 104:14-16.)

While working on the battery install job, plaintiff was required to use a harness to lift up a battery, place it inside a truck, and then use an electric screwdriver to tighten the bolts around the battery. (DE # 37-1 at 27; Haywood Dep. at p. 105:5-11.) Plaintiff was not tall enough to see inside the trucks to see where to place the battery, however, and she ended up "just doing it" even though she "couldn't see." (DE # 37-1 at 27; Haywood Dep. at p. 105:12-19.) Plaintiff was pulled off of the battery install job after supervisors observed her inability to see where each battery needed to be installed. (DE # 37-1 at 27; Haywood Dep. at pp. 106:25-107:3.) Plaintiff was also told that she had damaged 50 to 100 fenders during her time on the battery install job. (DE # 37-1 at 27; Haywood Dep. at p. 108:4-10.) The fender is "right by" the area that plaintiff was installing the battery. (DE # 37-1 at 27; Haywood Dep. at p. 107:13-15.)

After the battery install job, plaintiff was moved to another job that involved installing A/C units. (DE # 37-1 at 27; Haywood Dep. at p. 108:11-13.) On the A/C job, plaintiff was responsible for about eight different things including connecting several wires, one of which was a transmission cooler line (DE # 37-1 at 28; Haywood Dep. at p. 109:5-14.) Plaintiff was later informed that some of the trucks that she had worked on did not have transmission cooler lines that were properly plugged into place. (DE # 37-1 at 28; Haywood Dep. at p. 110:7-10.)

Later in August of 2012, plaintiff was terminated a second time. (DE # 37 at 6; DE # 37-1 at 28; Haywood Dep. at p. 111:14-23). Plaintiff was told that she was terminated due to poor performance because she had damaged several trucks. (DE # 37-1 at 29; Haywood Dep. at p. 114:4-14; DE # 37-1 at 83-84.)

Plaintiff eventually filed a complaint against defendant. (DE # 1.) In her complaint, plaintiff alleged that the above facts constituted retaliation and race discrimination in violation of Title VII, and also alleged that she was harassed at her job. (DE # 1 at 2.) Plaintiff also brought a claim for defamation against defendant. (*Id.*) Plaintiff alleged that defendant had defamed her when one of its employees created a performance review of plaintiff that indicated plaintiff's attendance and dependability were poor, when in fact they were not. (DE # 37-1 at 33; Haywood Dep. at p. 35:10-21.)

Defendant has now moved for summary judgment on all of plaintiff's claims. (DE # 36.)

II.     **Legal Standard**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-

moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d

966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

III.  **Analysis**

  **A. Plaintiff's Retaliation and Harassment Claims**

In its brief in support of its motion for summary judgment, defendant argues that the facts show that plaintiff cannot establish her claims of retaliation and harassment. (DE # 37 at 13-15.) The arguments that defendant makes in its brief would ultimately carry the day on these claims, but as defendant points out in its reply brief, plaintiff has abandoned these claims, and the court need not address defendant's substantive arguments. (DE # 39 at 1-2.)

In her response brief, plaintiff does not address any of the arguments that defendant makes in its brief regarding her retaliation and harassment claims. She does not even mention either of these claims. Plaintiff, therefore, has abandoned her retaliation and harassment claims. *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir.2003) (failure to address claim in response to summary judgment motion is deemed abandoned); *Carragher v. Indiana Toll Rd. Concession Co.*, 936 F. Supp. 2d 981, 988 (N.D. Ind. 2013). Summary judgment will be entered in favor of defendant on these claims.

**B. Plaintiff's Race Discrimination Claim**

Plaintiff also alleges that she was discriminated against because she is black. In her deposition, plaintiff appears to contend that the incident involving "Keri," discussed above, constituted discrimination, and also that the reasons for her terminations were lies:

> Q: How do you believe the company discriminated against you?
> A: Well when they returned the other employee that was sent over to [general assembly] with myself to return back after she finished the job that we were sent over there for initially.
> Q: That was Keri?
> A: Yes. They allowed her to go back and used me [in general assembly] for whatever reason and terminated me on a lie.
> Q: And so is that the incident you referred to?
> A: Yes.
> Q: Okay. Any other incidents that you believe were discriminatory based on your race?
> A: No.

(DE # 37-1 at 32; Haywood Dep. at pp. 125:25-126:14.) Plaintiff is presumably arguing that she was terminated because of her race.

Title VII forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove employment discrimination under Title VII using either the "direct method" or the "indirect method" of proof. *See, e.g., Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060-61 (7th Cir. 2003). Under the direct method of proof, a plaintiff must show through the preponderance of direct and/or circumstantial evidence that the employer's decision to

8

take an adverse job action against the plaintiff was motivated by an unlawful purpose, such as race or national origin. *Id.* at 1061. The indirect method provides a burden-shifting framework in which a plaintiff who establishes a prima facie case enjoys a presumption of discrimination which requires the defendant to articulate a legitimate non-discriminatory reason for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

Plaintiff mentions neither the direct nor the indirect method in her response. Because plaintiff's direct and circumstantial evidence of racial discrimination is insufficient to raise an issue of fact on whether any of the employment actions plaintiff complains about were motivated by a discriminatory purpose, however, the court will proceed to analyze plaintiff's claim under the indirect method.

Using the indirect, or "burden-shifting," method, the plaintiff carries "the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802 . To establish a prima facie case of discrimination, a plaintiff must offer evidence that: (1) she is a member of a protected class; (2) her job performance was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). Once such a showing is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its

actions. *Id.* If the employer does so, then the burden shifts back to the plaintiff to offer evidence suggesting that the offered explanation is a pretext for discrimination. *Id.*

### i. Plaintiff's Continued Assignment in the General Assembly Department

In its brief, defendant argues that plaintiff cannot establish a prima facie case of discrimination with regard to the "Keri" incident because plaintiff did not suffer an adverse employment action when plaintiff remained assigned to the general assembly department while Keri was moved back to the paint department. (DE # 37 at 9.) "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "Rather, the action must cause an adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or alteration of job responsibilities." *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008) (citations and quotations omitted).

In this case, plaintiff asserts she was discriminated against because she and Keri were both moved from the paint department, an easier job, to the general assembly department, which was a harder job. Keri, who is white, was moved back to the paint department a few days later, and plaintiff was not. As noted above, an alteration of job

10

responsibilities is not an adverse employment action, and plaintiff has not directed the court to any additional adverse consequences of her continued assignment to the general assembly department. Therefore, plaintiff's claim of discrimination fails as to the incident involving Keri.[2]

### ii. Plaintiff's Terminations

To the extent that plaintiff argues that she was discriminated against due to her race by being fired two times by defendant, defendant argues that plaintiff cannot make out a prima facie case because plaintiff cannot show she was meeting defendant's legitimate expectations and because plaintiff cannot show a similarly situated individual outside of plaintiff's class was treated more favorably. (DE # 37 at 9-10.)

Defendant's legitimate, non-discriminatory reason for terminating plaintiff was that plaintiff was terminated both times because she was performing poorly, as plaintiff was not meeting defendant's legitimate expectations. (DE # 37 at 9; DE # 37 at 5 ¶ 21; DE # 37-1 at 62-63; DE # 37-1 at 29; Haywood Dep. at p. 114:4-14; DE # 37-1 at 83-84.) Plaintiff, however, claims these justifications were lies, and presumably contends that she was actually fired on both occasions on account of her race. (DE # 37-1 at 32;

---

[2] In her response brief, plaintiff indicates that she has a witness that will come forward with additional evidence of her discrimination claim. (DE # 38 at 1.) Plaintiff requests that the court take into account that this witness has knowledge of a white employee being treated better than plaintiff. (*Id.*) "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (citations and quotations omitted). Plaintiff's promise of forthcoming evidence lends her no support here.

11

Haywood Dep. at pp. 125:25-126:14.). In these situations, "the second prong [of the prima facie case] and the pretext question seemingly merge because the issue is the same — whether the employer is lying." *Hague v. Thompson Distr. Co.*, 436 F.3d 816, 823 (7th Cir. 2006); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997) ("The defendant's expectations are not legitimate if they are phony; so if they are argued to be phony, the issue of legitimate expectations and the issue of pretext seem to merge."). Accordingly, the court will "focus on the question of pretext, while keeping in mind that if [plaintiff] did not present sufficient evidence of pretext, [she] also did not show that [she was] meeting [her] employer's expectations." *Hague.*, 436 F.3d at 823.[3]

---

[3] For the sake of argument, the court will assume that plaintiff could have established the existence of a similarly situated individual outside of her protected class that was treated more favorably than plaintiff was. The court notes, however, that it appears extremely unlikely that plaintiff could actually make this showing. The only other employee plaintiff identifies is "Keri," and the only information plaintiff has about Keri is that she was moved back to the paint department. (DE # 37 at 12.)

"The similarly situated inquiry is a flexible, common-sense comparison based on 'substantial similarity' rather than a strict one-to-one mapping between employees[.]"*Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (citations and quotations omitted). This analysis, however, still requires "enough common features between the individuals to allow [for] a meaningful comparison." *Id.* (citations and quotations omitted). Thus, "[s]imilarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe,* 667 F.3d 835, 846 (7th Cir. 2012)(citations and quotations omitted). "A meaningful comparison is one which serves to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination."*Argyropoulos*, 539 F.3d at 735 (citations and quotations omitted). "The touchstone of the similarly-situated inquiry is simply whether the employees are comparable." *Coleman*, 667 F.3d at 846 (citations and quotations omitted).

Plaintiff has provided the court with essentially no information upon which the court could make a meaningful comparison between plaintiff and Keri. Thus, plaintiff's prima facie case would likely fail under this element.

Plaintiff can demonstrate that defendant's explanation is pretextual directly by showing that "a discriminatory reason more likely motivated" defendant's employment action, or indirectly by showing that defendant's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In this case, plaintiff cannot demonstrate pretext directly, because she has no evidence that race played a role in either of her terminations. She has pointed to no comments or other incidents involving race. The only fact that plaintiff can point to that even tangentially relates to race is that Keri was moved back to the paint department and plaintiff was not. This fact, however, clearly does not create an issue of fact regarding whether defendant's stated reasons for firing plaintiff were pretextual.

An indirect approach to pretext fares no better, though, because plaintiff cannot show that defendant's explanations for its decisions to terminate plaintiff are unworthy of credence. Plaintiff was first fired on July 13, 2012 for poor work performance. (DE # 37 at 5 ¶ 21; DE # 37-1 at 62-63.) Specifically, the discharge form indicated that plaintiff was terminated for poor performance in the trim department. (DE # 37-1 at 62.)

While plaintiff generally avers that she was not performing poorly prior to either of her terminations (DE # 37-1 at 32; Haywood Dep. at pp. 125:25-126:14.), she has not directed the court to any other evidence that defendant did not actually believe the reason for which plaintiff was terminated. The Seventh Circuit has articulated

"countless times" that "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the *true ground* of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground. . . . If it is the true ground and not a pretext, the case is over." *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 417 (7th Cir. 2006) (emphasis added) (citations omitted); *see also Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006) (the pretext inquiry must focus on whether the employer's stated reason is honest, not whether it is well-reasoned, wise or accurate). As the Seventh Circuit aptly stated in *Millbrook v. IBP, Inc.*:

> [A] court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments. As we have stated, no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [anti-discrimination law] does not interfere.

280 F.3d 1169, 1181 (7th Cir. 2002) (internal quotation marks, alterations, and citations omitted); *see also Blise v. Antaramian,* 409 F.3d 861, 867-68 (7th Cir. 2005) ("Blise may be right—she may be more qualified than Davis, and Davis may not be qualified at all—but so long as Kenosha genuinely believed differently (and Blise offers us no evidence that its agents did not), it is entitled to act on that belief.").

Thus, even if defendant was entirely wrong about the factual basis for its decision to fire plaintiff, it does not follow that defendant's stated rationale for firing plaintiff — that she performed poorly at her job in the trim department — was *a lie*. Plaintiff has provided nothing more than her own suspicions that those reasons were

not genuinely believed by defendant, and her own suspicions are not good enough. *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim."). In sum, plaintiff cannot demonstrate an issue of fact regarding pretext, either directly or indirectly, and as such she cannot rely on the *McDonnell Douglas* method to save her claim from summary judgment, as it relates to her first firing.

With regard to her second firing, plaintiff's claim again fails because she cannot raise an issue of fact regarding pretext. As noted earlier, upon being rehired, plaintiff had two primary jobs before she was terminated again: battery install and A/C install. (DE # 37-1 at 26; Haywood Dep. at p. 104:14-16.) With the battery install job, plaintiff was not tall enough to see inside the trucks she was working on and ended up doing this job without the benefit of actually seeing what she was doing inside the truck. (DE # 37-1 at 27; Haywood Dep. at p. 105:12-19.) Plaintiff was eventually removed from the battery install job after supervisors observed her inability to see where each battery needed to be installed. (DE # 37-1 at 27; Haywood Dep. at pp. 106:25-107:3.) She was also informed that she had damaged 50 to 100 fenders during her time on the battery install. (DE # 37-1 at 27; Haywood Dep. at p. 108:4-10.)

Plaintiff was next put to work installing A/C units. She had several different responsibilities at this job, including connecting several wires, one of which was a transmission cooler line (DE # 37-1 at 28; Haywood Dep. at p. 109:5-14.) Plaintiff was eventually informed that some of the trucks that she had worked on did not have transmission cooler lines that were properly plugged into place. (DE # 37-1 at 28;

15

Haywood Dep. at p. 110:7-10.) In August of 2012, plaintiff was once again terminated, and was told that she was being terminated because she had damaged several trucks while performing work on them. (DE # 37-1 at 29; Haywood Dep. at p. 114:4-14; DE # 37-1 at 83-84.)

As noted earlier, plaintiff cannot show pretext directly, because she has no evidence that race played a role in either of her terminations. She also fails to show that defendant's explanations for its decision to terminate her the second time are unworthy of credence. *See Senske*, 588 F.3d at 507. Plaintiff attempts to show that defendant's proffered reason for her second termination is unworthy of credence in several different ways.

First, plaintiff attempts to cast doubt on defendant's justification for her firing by pointing out that she was never properly trained. (DE # 38 at 3.) Plaintiff directs the court to a statement by a former co-worker (DE # 37-1 at 60-61), in which the coworker explains that plaintiff was never property trained and therefore could not appreciate the damage that she was actually doing to the trucks. The coworker also points out that any damage that plaintiff may have caused would have been detected and corrected before the vehicle left the assembly line for sale. (*Id.*) Even accepting these facts as true, however, it does not indicate that defendant's proffered reason for terminating plaintiff – poor performance that resulted in damage to vehicles – was a lie. This information therefore lends plaintiff no support in raising an issue of fact on pretext.

Plaintiff also directs the court to a document she presented at her deposition (DE # 38 at 3) which she claims is proof that she did not damage any trucks on the night

16

she was terminated the second time. This document (DE # 37-1 at 65) is a summary chart of the defects reported on the lines that plaintiff worked on from August 12, 2012 to August 20, 2012. Plaintiff points out that there is nothing in this summary chart that indicates that she was the cause of any of the defects. (DE # 38 at 3.)

It is true that nothing in that document identifies plaintiff as the cause of any defect. But, as plaintiff admitted in her deposition, there is nothing in this document that identifies the employee who was responsible for any of the defects in question. (DE # 37-1 at 30; Haywood dep. at p. 120:21-25.) The document simply does not identify the employee responsible for each defect listed. Therefore, nothing in this document indicates that defendant's reason for terminating plaintiff was a lie.

Finally, plaintiff's general averment that defendant's reason for terminating her was a lie lends plaintiff no support. She directs the court only to her own testimony that defendant's reason for terminating her was a lie, and her own suspicions are not good enough. *Uhl,* 121 F.3d at 1137 ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim."). In sum, plaintiff cannot demonstrate an issue of fact regarding pretext, either directly or indirectly, and as such she cannot rely on the *McDonnell Douglas* method to save her claim from summary judgment, as it relates to her second firing.

### C. Plaintiff's Defamation Claim

Plaintiff also alleges that defendant is liable for defamation. (DE # 38 at 3.) Plaintiff bases this claim on several documents created by defendant. First, plaintiff claims that her original discharge form (DE # 37-1 at 62-63) included false information

17

and defamed her character. (DE # 38 at 3.) Specifically, plaintiff contends that the review portion of the discharge form that indicated that plaintiff's attendance and dependability were poor was not true, as plaintiff never missed a day and was always on time. (DE # 37-1 at 33; Haywood dep. at p. 132:10-21.)

Plaintiff also contends that her second discharge form defamed her character. (DE # 38 at 6; DE # 37-1 at 64, 83-84) Plaintiff argues that the stated reason for her termination, poor performance, was not true. (DE # 38 at 6.) Finally, plaintiff alleges that time sheets produced by defendant indicating that plaintiff was absent 15.1% of the time she worked for defendant are false and defamatory. (DE # 38 at 5; DE # 37-2.)

In order to succeed on a claim of defamation under Indiana law, a plaintiff must prove four elements: "(1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007). Defendant argues that plaintiff cannot succeed on her defamation claim because the statements plaintiff complains about are subject to a qualified privilege. (DE # 37 at 15.) Plaintiff does not respond to this argument. (DE # 38.)

Indiana maintains a qualified privilege defense to certain defamation claims in the employment context:

> To accommodate the important role of free and open intracompany communications and legitimate human resource management needs, the qualified privilege is available to protect personnel evaluation information communicated in good faith. Qualified privilege is a defense to a defamation action and applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in

reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.

*Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (citations and quotations omitted). The Indiana Supreme Court has held that "[i]ntracompany communications regarding the fitness of an employee are protected by the qualified privilege." *Id.*

The communications at issue in this case are undoubtedly covered by the qualified privilege, as each statement plaintiff takes issue with was in regard to her performance or attendance. Because defendant's statements are covered by the qualified privilege, plaintiff "has the burden of overcoming that privilege by showing that it has been abused." *Id.* "A statement otherwise protected by the doctrine of qualified privilege may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.*

As noted above, plaintiff does not respond to defendant's qualified privilege argument, and therefore, has failed to put forth any argument that the privilege was abused in this case. It should be noted, however, that plaintiff fails to direct the court to any evidence that the person who communicated any of these statements was primarily motivated by ill will in making the statements. Additionally, the publication of these statements, if any, was minimal. Finally, although plaintiff claims that the assertions in the statements are untrue, she has failed to direct the court to any evidence indicating any of the statements was made without belief or grounds for belief in its truth. *Id.* at 1357 ("By simply denying the factual content of [defendant's] reports, or by referring to

other evidence disputing such content, [plaintiff] does not present substantial evidence that [defendant] had no grounds for belief in the truth of the statements in his reports. [Plaintiff] has thereby failed to show abuse of privilege.")

In sum, no reasonable jury could conclude that defendant abused the qualified privilege in this case regarding the alleged defamatory statements. Defendant's motion for summary judgment will therefore be granted as it relates to plaintiff's defamation claim.

## IV. Conclusion

For the foregoing reasons, defendant General Motors' motion for summary judgment on plaintiff Michelle Haywood's claims (DE # 36) is **GRANTED**. There being no claims remaining against defendant in this case, the clerk is directed to **ENTER FINAL JUDGMENT** as follows:

> Judgment is entered in favor of defendant General Motors, and against plaintiff Michelle Haywood, who shall take nothing by way of her complaint.

**SO ORDERED.**

Date: August 19, 2015

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT